IN this case there was a great deal of evidence given 011 both sides, and the cause was very fully and ably ar-2-ue(] w the counsel. But the ground upon which the u rested his decree, renders it unnecessary to de-£aj} +]ie evidence, or state the arguments of counsel.
The complainant’s bill charges defendant with gross fraud, misrepresentation and concealment, in obtaining an insurance in his own name on goods which were not *7 his property $ also with a breach of the warranty contained in the policy that warrants the property to be American or neutral property, whereas in fact they were the property of J. Fletcher or some other .persons subjects of a foreign state, and subject to capture and condemnation : —That the policy was therefore void. The bill states the loss by shipwreck of the goods, and that complainants have paid the loss to the amount insured on the policy which has been cancelled. The complainants pray a discovery on oath of the defendant of these facts, and likewise the production of all letters and papers in his possession relative to the transaction, and restoration of the money improperly paid to the defendant, with interest. The defendant, in his answer, admits the policy, and that the goods were insured as American or neutral property j and states that upon the receipt of a letter from Fletcher, dated at the Havana, ordering insurance on a large quantity of sugar, to be shipped from thence, he went to Davis and Reid (insurance brokers) to causé it to be done, and delivered the letter to Davis, one of the partners, who (defendant believes) laid it before D. Desaussure, the president, and other officers of the insurance company, with the memorandum or offer for insurance ; and he believes they were all left with them, and still remain in their possession, if not lost, mislaid or destroyed : That to the best of defendant’s information, knowledge and belief, Fletcher was really and bona fide an American citizen, as he was then and afterwards reputed to be ; and not a legally naturalized subject as or citizen or domiciliated resident of the crown of Spain. Defendant also swears that one M’Evoy and himself, together with Fletcher, were interested in the cargo, and admits that the policy was only made out in defendant’s name, as was then customary and usual, although several others might be interested in the cargo. Defendant denies thatthe factof Fletcher’s beinginterested, was concealed from the insurance company or the mercantile, public generally; on the contrary, that his letter was shewn to the officers of the company when the insurance was ef *8 fected ; and when the payment of the loss \,as demanded, it was known generally that Fletcher was interested, an)j ^at he was a citizen of the United States, and particularly to the president of the company, who personally-conversed with Fletcher on the subject. Defendant admits that he received the money when the loss was settled, and swears that he acted merely as Fletcher’s agent, and immediately paid over Fletcher’s proportion, by his order, to T. Stewart, and did not charge one cent commission for his trouble in the business. Defendant denies all fraud, misrepresentation or concealment.
After the bilí and answer wrere read I strongly inclined to think it was a question properly determinable at law. I however permitted the evidence and arguments to be gone into, in order to see if there were any peculiar circumstances in the case, to give this court a jurisdiction by which complaina;. ^ might have more complete and adequate remedy here than they could have at law. After the arguments were closed, I suggested that it was not improbable I should direct an issue. Since the last term I have maturely considered the case, and have reviewed the history of marine insurances $ from which it appears that all disputes relative to them were originally settled by a particular tribunal, and that suits were never brought in the courts of equity, and rarely of law, till the end of the 17th cen+ury, when that particular tribunal fell into disuse. Still few cases were determined even at law, till about the middle of the last century, when Lord Mansfield preside-’ 'n the CourtofKing’s Bench; since which, causes of this kind have been universally decided in that court, as appears by the books of reports. I am therefore of opinion, that a court of law is the proper and only tribunal for the determination of questions of this sort; and that complainant may have complete and adequate remedy there by an action for money had and received. And that being the case, this court is expressly enjoined by law from entertaining the suit; and although the defendant himself shall wave the objection to the jurisdiction by answering, yet a court of equity, *9 if a plain defevt of jurisdiction appears at the hearing, will no more make a decree, as Lord Handwicke says, than where a plain want of equity appears. To he sure several cases are to be found where this court has so far interfered, as to grant injunctions to stay proceedings at law, where complainant in his bill calls on defendant for a discovery of certain facts only within his own 'knowledge, and for the production of papers in his possession, until the defendant has answered, and produc-duced the papers ; also till witnesses abroad can be examined on commission. But where those objects of the bill are accomplished, the court will proceed no further. So in the present case it might be necessary to bring suit merely to obtain a discovery relative to the policy of insurance and the nature of it | it being alleged by the bill that the policy was cancelled and destroyed ; and also to compel the production of letters and papers in defendant’s possession, which could throw light on the subject. That being done, it was no longer necessary to proceed here, because the complainants might then have gone on with their action at law, and under our act of assembly might have obtained commissions at law, to examine their witnesses. The case of Carter vs. Boehme, in 3d Burr, p. is an authority in point. In that case the bill was filed to obtain a discovery of certain facts in the knowledge of the defendant. After answer and examination of witnesses, the cause was sent to law, and tried before Lord Mansfield in 1766. After the most diligent researci^, I cannot find a single authority to warrant the.courts of equity exercising jurisdiction in cases of this kind : on the contrary, there is one case determined in 1729, De Getoff vs. London Assurance Company, upon a demurrer to the jurisdiction of the court, on a bill of this sort, in which case, Lord Ch. King sustained the demurrer and dismissed the bill. (Mosely, 83. 4.) His decree was appealed from, but it was affirmed in the house of lords. (No charge of fraud.) Since that decision, say the books, it has been settled that courts of equity have no more juris die- *10 tioa in cases of insurance than in those of the purest , . „ T , _ † . , common J*aw cognizance; ior, says Lord Hardwick, “ If on a suggestion of slight grounds of equity, bills of this sort were to be encouraged, it would bring all poli-' cies and other matters of property to be determined here, and the parties would be effectually deprived of the benefit of the trial by j ury.” From the above authorities, and a series of cases determined at law for half a century, it is plain and manifest, that .they are properly and exclusively determinable at law j that the parties have had and can always have complete & adequate remedy there $ ■and therefore that this court ought not to take cognizance of them | and also because it is restrained by the iaw which establishes it, from entertaining suits in all such caseSb Bill dismissed with costs.*

 There was nó appeal from this decree. The case of Be Ghetoff v, the London Insurance Company, decided by Lord King, in 1729, (Moseley’s Reports, p. 83,) and whose decree was affirmed by the House of Lords in 1730, (see 3 Bro. P. C. 525) does certainly establish the doctrine that the subject of Insurance is of legal cognizance, and that as in general, complete and adequate remedy at law can be had, this Court will not in general interfere. It must not, however, be inferred that the Court will not under any circumstances interfere in Insurance transactions, a,nd give 'relief on a proper case being made out. For on this as well as on every other subject in human transactions of a civil nature, where it is necessa. ry for the prevention or detection of fraud, or for a discovery, or for any other essential purpose of justice, otherwise unattainable, this Courtwill interpose. In the case of Da Costa v. Scandret, reported in 2 P. Williams, p. 170, Lord Macclesfield relieved against a policy of Insurance, and decreed that it should be given up, on the ground that the insured had not disclosed all that he had heard of the state of his ship, at the time he effected his policy. It was an improper concealment, which would draw the interposition of this Court. In the case of Green v. Suasso, reported in 2d Atkins, p. 229, Lord Hardwicke granted and continued an injunction to restrain proceedings atlaw on a policy of Insurance, to enable the Insurer to examine witnesses abroad, and to be fully prepared for their defence at law. So in the subsequent case of Chitty v. Selwin and Martin, 2 Atk. p. 359. In another case, that of Motteux v. the London Insurance Company, 1 Atk. 545—6, 7. 8, Lord -Hardwicke entertained the bill, so far as to direct and prescribe the particular issues to be tried at law. In the case of Pringle v. Hartley, 3 Atk. 195, decided in 1744, Lord Hardwicke refused to grant an injunction, to stay proceedings at law, after verdict obtained m a suit, oh a policy of Insurance. But he did it on the merits which lie went into the consideration of, and lie prescribed terms to the insured, who had recovered at law; direct *11 ing him to assign to complainant, the insurer, all his right in the ship, andthebenefit of the decree m the Admiralty for salvage. Woodeson in fiis Lectures, 3d vol. p. 410, sec. 56, expressly states that it is a good ground for obtaining an injunction against an action at law, commenced on bond, notes, policies of insurance, or the like, to alledge that such instruments were obtained unfairly, and by misrepresentation. And m Insurances against fire, the Court of Chancery has proceeded to decide on the merits of the claimant, under the policy, without scruple. In the case of Lynch & al. v. Dalzel & al. decided by Lord King and affirmed by the House of Lords, (see 3 Bro. P. C. 497 to 503,) he decreed that the assignee of'the insured cannot recover on the policy, and that the insured must have an -ntcrest at the time of the loss; and so decided by Lord Hardwicke in 1743. See 2 Atk. 554 to 557, Saddler’s Co. v. Badcock & al.